IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATIONAL DIVERSITY COUNCIL,<br><br>        PLAINTIFF,<br>V.<br><br>R. DENNIS KENNEDY,<br><br>        DEFENDANT. | CASE NO. 4:23-CV-01162<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff National Diversity Council ("NDC") files this Complaint against R. Dennis Kennedy ("Kennedy") for (1) the cancellation of fraudulently obtained trademark registrations under 15 U.S.C. § 1119, (2) damages for fraudulent registrations under 15 U.S.C. § 1120, and (3) false descriptions and representations under 15 U.S.C. § 1125(a)(1)(A).

### I.   PARTIES

1. Plaintiff National Diversity Council ("NDC") is a non-profit organization located at 1301 Regents Park Drive, Suite 210, Houston, Texas 77058.

2. Kennedy is an individual residing in Harris County.

### II.   JURISDICTION AND VENUE

3. This is an action for various claims under the Lanham Act, 15 U.S.C. §§ 1051 et seq. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b).

4. Defendant is subject to personal jurisdiction in this district because Defendant either resides in or is doing substantial business in this district. In addition, Defendant has infringed NDC's trademark and committed other violations of the Lanham Act in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the claims arose in this district and Defendant resides in Harris County.

### III.   FACTUAL BACKGROUND

**A.   NDC and the NDC Trademarks**

6. NDC is a Texas nonprofit corporation formed in 2007 and recognized by the Internal Revenue Service as a charitable organization under Section 501(c)(3) of the Internal Revenue Code of 1986.

7. NDC's mission is to be both a resource and an advocate for the value of diversity and inclusion.

8. The NDC serves as the umbrella organization to support statewide and regional affiliates, which foster an understanding of diversity and inclusion as a dynamic strategy for business success and community well-being through various initiatives.

9. Today, NDC is the undisputed leader in championing diversity in the workplace.

10. NDC has been actively promoting its various services since at least 2008.

11. Over the past 15 years, NDC has created a tremendous amount of consumer recognition across the U.S. connection with its NDC trademarks, including the NDC and NATIONAL DIVERSITY COUNCIL (collectively, the "NDC Marks").

12. NDC is a forerunner of community-based national organizations that champion diversity, equity, and inclusion across the country.

13. NDC is made up of state and regional councils, Global Diversity Council, Healthcare Diversity Council, Council for Latino Workplace Equity, and National Coalition for Racial Justice & Equity.

14. In 2022, NDC hosted numerous conferences/summits under the NDC Marks, including the following:

    a. Black Men in Leadership Summit,

    b. Women in Leadership Symposiums,

    c. Asian American Pacific Islander Summit,

    d. the National Latino Leadership Conference,

    e. the National Disability Inclusion Summit,

    f. the National Manufacturing Conference, and

    g. the National Healthcare DEI Conference.

15. NDC also hosted college students for its Emerging Leaders Internship Program under the NDC Marks.

16. Further, NDC offers various training programs, including the Certified Diversity Professional Program (CDP) and the Executive Certification Program under the NDC Marks.

17. NDC has a 95% score with the highest four star ranking on the Charity Navigator website. Less than 0.1% of charities they rate earn a score of 95% or higher. The Charity Navigator rates organizations on how impactful they are in their given cause area, their fiscal responsibility and transparency, and follow leadership and organizational culture best practices.

18. Due to the longstanding use, extensive advertising, and widespread recognition among the consuming public, the NDC Marks are widely known recognized as being associated with NDC.

B.   **Kennedy's Unlawful Activities**

19.   Kennedy was a co-founder of NDC and previously served as board chairman and an employee of NDC.

20.   Kennedy resigned from NDC on January 31, 2023.

21.   Today, Kennedy has no relationship or affiliation with NDC.

22.   While employed by NDC and continuing after separating from NDC, Kennedy has provided and is continuing to provide services that compete with NDC, such as diversity conferences.

23.   Although Kennedy was providing these services as a separate activity from NDC, Kennedy caused confusion as to whether these services were being provided by NDC or were associated with NDC.

24.   In at least one recent instance, a participant of one of Kennedy's separate conferences reached out to NDC to ask whether this conference was being provided by NDC.

25.   Further, in at least one instance, a participant of one of Kennedy's separate conferences provided NDC with a purchase order identifying NDC as the vendor, although Kennedy was providing the conference separate from NDC.

26.   In addition, Kennedy advertising has cause and is likely to continue causing consumer confusion.

27.   As an officer and co-founder, Kennedy had a fiduciary duty to NDC, including a duty of loyalty, a duty of care, and a duty of obedience.

28.   On information and belief, at some point during his relationship with NDC, Kennedy covertly began a scheme to utilize NDC's trademarks, reputation, and contacts to

establish and build separate for-profit and non-profit organizations designed to compete with NDC—all while being compensated by NDC.

29. To date, Kennedy has filed about 376 trademark applications with the USPTO for various trademarks, including NDC's trademarks.

30. In 2022 alone, before resigning from NDC, Kennedy filed about 350 trademark applications with the USPTO. However, Kennedy never identified NDC as the owner of any trademark application or registration.

31. Kennedy filed all of these trademark applications with the USPTO while an officer of NDC.

32. Kennedy also did not notify the NDC Board of his activities regarding these trademark applications and registrations.

33. For example, on August 5, 2022, prior to his departure from NDC, Kennedy filed application serial no. 97537006 for NDC—the common acronym used by NDC and one of the NDC Marks.

34. Kennedy stated in his application that this NDC mark was used for "[a]ssociation services, namely, promoting public awareness of professional, personal, and organizational development in the promotion of diversity" and that the date of first use was in 2008.

35. From 2008 to the present, the NDC mark has been used by NDC, not by Kennedy as an individual.

36. Then again, on December 6, 2022, while he was with NDC, Kennedy filed application serial no. 90567061 for NDC's name—NATIONAL DIVERSITY COUNCIL. That application matured into Reg. No. 6915281.

37. Again, the NATIONAL DIVERSITY COUNCIL mark has, at all times, been used by NDC, and not by Kennedy as an individual.

38. Kennedy never identified NDC as the owner of the NATIONAL DIVERSITY COUNCIL or NDC marks.

39. NDC was and is still the owner of the NDC Marks.

40. NDC is also the owner of many other trademarks that Kennedy has fraudulently sought to register with the USPTO under his own name.

41. Under U.S. law, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors. If a corporation is using a mark, then a principal officer and shareholder is not the owner.

42. Kennedy, as a former employee and board chair of NDC, does not have any individual ownership rights of NDC's marks, including the NATIONAL DIVERSITY COUNCIL and NDC marks.

43. Courts regularly hold that "even controlling shareholders and principal officers of a corporation do not have individual ownership rights in a mark that only the corporation used."[1] As further proof that Kennedy does not own the NDC trademarks, one need only look at the specimens Kennedy provided to the U.S. Patent and Trademark Office.

44. When applying to register NDC's marks, Kennedy filed specimens with the USPTO that show NDC's website and social media posts.

45. Kennedy's recent conduct regarding trademark registrations stands in stark contrast to normal business practices and also NDC's history with the USPTO.

---

[1] *Cave Man Kitchens Inc. v. Caveman Foods LLC*, No. C18-1274 TSZ, 2020 WL 7342977, at *1 (W.D. Wash. Dec. 14, 2020).

46. For example, NDC filed an application for NATIONAL DIVERSITY AWARDS in 2012, which issued as registration no. 4499642 in 2014.

47. As is standard practice for organizations, Reg. No. 4499642 was properly assigned and owned by NDC.

48. In 2019, while an officer for NDC, Kennedy received notice that Reg. No. 4499642 would be cancelled if NDC did not timely file a Declaration of Continued Use to maintain the mark on the Principal Register. Indeed, Kennedy received an email from the USPTO on March 18, 2019, a portion of which is copied below:

```
From:       TMOfficialNotices@USPTO.GOV
Sent:       Monday, March 18, 2019 01:07 AM
To:         dennis_kennedy@texasdiversitycouncil.org ; dennis_kennedy@texasdiversitycouncil.or
Cc:         anh.vu@nationaldiversitycouncil.org
Subject:    Official USPTO Courtesy Reminder of Required Trademark Registration Maintenance Filing Under Section 8: U.S. Trademark RN
            4499642: NATIONAL DIVERSITY AWARDS

U.S. Serial Number:     85605039
U.S. Registration Number:   4499642
U.S. Registration Date: Mar 18, 2014
Mark:   NATIONAL DIVERSITY AWARDS
Owner:  NATIONAL DIVERSITY COUNCIL
```

49. This email included the following: "**WARNING: Your trademark registration will be CANCELLED if you do not file the required document below during the specified statutory time period.**" (emphasis in original).

50. As of 2019, NDC was still using the mark NATIONAL DIVERSITY AWARDS.

51. Although Kennedy knew that NDC was still using this mark, Kennedy allowed Reg. No. 4499642 to be cancelled for failure to file the Declaration of Continued Use.

52. Then, in 2021, while he was still serving as an officer of NDC, Kennedy filed application serial number 90590562 for NATIONAL DIVERSITY AWARDS, which issued as Reg. No. 6458087.

53. Kennedy did not identify NDC as the owner of the NATIONAL DIVERSITY AWARDS mark.

54. When Kennedy filed the application for NATIONAL DIVERSITY AWARDS, Kennedy knew that NDC was still using the NATIONAL DIVERSITY AWARDS mark, including at www.ndcawards.org.

55. The specimen that Kennedy provided to the USPTO as proof of use of the NATIONAL DIVERSITY AWARDS mark in application serial no. 90590562 shows a webpage with the following message from Kennedy:



## Founder's Welcome

Welcome to the National Diversity Awards website. Everyday hard working men and women are transforming their workplaces and communities into surroundings where individuals are valued for their talents and empowered to reach their fullest potential. The National Diversity Awards Association serves as the umbrella organization to showcase our nation's top talent. **The awards are given by the National Diversity Council.**

56. Kennedy did not identify NDC as the owner of the NATIONAL DIVERSITY AWARDS mark to the USPTO, just as Kennedy did not identify NDC as the owner of the NDC or NATIONAL DIVERSITY COUNCIL marks.

57. In his application for the NATIONAL DIVERSITY AWARDS mark, Kennedy stated that the date of first use was in 2012. Any use in 2012 of NATIONAL DIVERSITY AWARDS would have been use by NDC, and not Kennedy as an individual.

58. In violation of 15 U.S.C. § 1120, Kennedy has fraudulently registered at least the following trademarks:

| Mark | Reg. No. |
|---|---|
| NATIONAL DIVERSITY COUNCIL | 6915281 |
| NATIONAL DIVERSITY COUNCIL AN INCLUSIVE COMMUNITY A BETTER NATION | 6933084 |
| NATIONAL DIVERSITY AWARDS | 6458087 |

59. Kenney knew that NDC was the true and proper owner of the NDC Marks.

60. Kennedy also fraudulently alleged use by NDC to obtain these registrations, including providing specimens to the USPTO showing NDC's use of these marks.

61. On Sunday, March 26, 2023, Kennedy's lawyer sent NDC a DEMAND TO CEASE AND DESIST letter, demanding that NDC stop using its own name and trademarks, a copy of which is attached as Exhibit A.

62. The letter stated that "as of Sunday, March 26, 2023, the NDC's license to use the NDC trademark has been revoked by the trademark owner, R. Dennis Kennedy."

63. Kennedy also stated that "the NDC's licenses [sic] to use the below domains are also revoked," which includes NDC's domain name at nationaldiversitycouncil.org.

64. Kennedy, as a former board chair and employee, is now demanding that NDC stop using its own name and website.

65. Kennedy is not the owner of the NDC Marks.

66. Kennedy and NDC never entered into any license agreement for the NDC Marks because NDC, as the corporate entity using the marks is the proper owner of those marks.

67. This letter is the first time that Kennedy ever attempted to notify NDC that he, as an individual, owned any of NDC's trademarks.

68. This letter is also the first time that Kennedy mentioned the idea that NDC was using the NDC Marks under a license from Kennedy.

69. There is no written or oral license agreement between Kennedy and NDC for any trademarks, let alone the NDC Marks.

70. At all times, NDC has been and continues to be the true and proper owner of the NDC Marks.

71. NDC has used the NATIONAL DIVERSITY AWARDS mark in the past, and is presently using the NATIONAL DIVERSITY COUNCIL AWARDS mark on its website at ndcawards.org.

72. Despite knowing that it would be confusing, Kennedy created a nearly identical website at diversityawards.com using the following graphic:



73. Not only is Kennedy infringing on NDC's trademarks, but Kennedy is also creating a false impression that he and his organizations are still associated with NDC.

74. For example, although Kennedy is no longer affiliated with NDC, Kennedy is telling the public the following on his diversityawards.org website:



75. NDC does provide the National Diversity Council Awards. However, Kennedy is no longer affiliated with or associated with NDC.

76. Further, Kennedy does not have a license or permission to use any of NDC's trademarks.

77. Kennedy also does not have permission to present himself as being affiliated or associated with NDC. Consequently, Kennedy is not entitled to use any of the NDC Marks to promote his other endeavors, nor is he entitled to create the misleading impression that he is still associated or affiliated with NDC.

78. Kennedy is also now directly competing with NDC for conference participants and sponsors.

## IV.   CLAIMS FOR RELIEF

**A.   COUNT I: Cancellation of Kennedy's Registrations of NDC's Marks Under the Lanham Act, 15 U.S.C. § 1119**

79.   NDC realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

80.   Kennedy has falsely and/or fraudulently obtained the following registrations:

| Mark | Reg. No. |
|---|---|
| NATIONAL DIVERSITY COUNCIL | 6915281 |
| NATIONAL DIVERSITY COUNCIL AN INCLUSIVE COMMUNITY A BETTER NATION | 6933084 |
| NATIONAL DIVERSITY AWARDS | 6458087 |

81.   When submitting each trademark application, Kennedy provided specimens that show NDC's use of these trademarks—not Kennedy's.

82.   In each of these registrations, Kennedy alleged a date of first use based on NDC's use of the mark.

83.   Kennedy never identified NDC as the proper owner of these registrations.

84.   Under 15 U.S.C. § 1119, this Court may determine the right to registration, order the cancelation of registration nos. 6915281, 6933084, and 6458087, judicially determine that NDC, not Kennedy, is the owner of these registrations, and direct the USPTO to make appropriate entries in the records with respect to these registrations.

85.   Because Kennedy obtained these registrations by false or fraudulent declaration or representations, the Court should cancel these registrations.

86.   In the alternative, the Court should declare pursuant to 15 U.S.C. § 1119 that NDC is the owner of these registrations, and Kennedy is not the owner.

87. NDC has been injured and damaged as a result of Kennedy's registration of these marks.

88. NDC is entitled to recover its actual damages and the costs of this action.

**B.      COUNT II: Damages for Kennedy's False or Fraudulent Registrations Under the Lanham Act, 15 U.S.C. § 1120**

89. NDC realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

90. Kennedy has falsely and/or fraudulently obtained the following registrations:

| Mark | Reg. No. |
|---|---|
| NATIONAL DIVERSITY COUNCIL | 6915281 |
| NATIONAL DIVERSITY COUNCIL AN INCLUSIVE COMMUNITY A BETTER NATION | 6933084 |
| NATIONAL DIVERSITY AWARDS | 6458087 |

91. When submitting each trademark application, Kennedy provided specimens that show NDC's use of these trademarks—not Kennedy's.

92. Kennedy never identified NDC as the owner of these registrations.

93. NDC has been injured and damaged as a result of Kennedy's registration of these marks.

94. Under 15 U.S.C. § 1120, Kennedy is liable to NDC for any damages sustained in connection with his registration and purported attempt to exercise control over NDC's marks.

95. NDC is entitled to recover its actual damages and the costs of this action.

**C.      COUNT III: False Designation of Origin and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)**

96. NDC realleges and incorporates by reference the allegations set forth in the

preceding paragraphs.

97. NDC is the owner of the NDC trademarks, including NDC, NATIONAL DIVERSITY COUNCIL, and NATIONAL DIVERSITY COUNCIL AWARDS.

98. The NDC marks are distinctive marks that are associated with NDC and NDC's business and services.

99. Kennedy has used, and continues to use, in commerce one or more words, terms, names, symbols, devices, designs and combinations thereof and/or false descriptions of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Kennedy with NDC and/or as to the origin, sponsorship, or approval of the services and commercial activities of Kennedy, and thus constitute trademark infringement, false designation of origin, false association/affiliation, and unfair competition with respect to the NDC Marks, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

100. Defendant's actions described above have at all times relevant to this action been willful and intentional.

101. As a result of Defendant's actions, NDC has been damaged and will continue to be damaged. NDC is entitled to recover Defendant's profits, its actual damages, and the costs of this action. NDC is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendant's willful conduct.

## APPLICATION FOR PERMANENT INJUNCTION

102. NDC realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

103. Defendant, unless enjoined, will continue to misrepresent to or mislead the public into believing that his services are sponsored by, approved by, affiliated with, associated with, or

originated by NDC. Defendant will continue to infringe the NDC Marks by using those marks or confusingly similar variations, to identify Defendant's competitive services in violation of the Lanham Act.

104. These actions entitle NDC to a permanent injunction, upon hearing, enjoining Defendant and all persons in active concert or in participation with Defendant from:

    (a)    Representing Defendant's services are in any way sponsored by, approved by, affiliated with, or originated by NDC;

    (b)    Using any of the NDC Marks or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name, name component, domain name or domain name component, source codes, trade dress, or to otherwise market, advertise, or identify Defendant's services; and

    (c)    Otherwise competing unfairly with NDC or injuring its business reputation in any manner.

105. For these actions, there is no adequate remedy at law. NDC is therefore entitled to permanent injunctive relief against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, NDC respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief against Defendant including, but not limited to:

    (1)    Actual, treble, and exemplary damages;

    (2)    In accordance with 15 U.S.C. § 1116, issue a permanent injunction enjoining Defendant and all persons in active concert or participation with Defendant from the acts described in this Complaint;

    (3)    Order Defendant and all persons in active concert or participation with Defendant to identify all third parties to whom Defendant has represented an ownership, affiliation, association, or sponsorship with the NDC Marks and to whom Defendant has distributed any type of materials incorporating the NDC Marks;

    (4)    Order Defendant to provide an accounting of all sales, revenues, and profits related to Defendant's services that infringe the NDC Marks and that are falsely designated

    as being sponsored by, approved by, affiliated with, or associated with NDC;

(5) In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the NDC Marks be surrendered for destruction;

(6) In accordance with 15 U.S.C. §§ 1117, award NDC all of Defendant's profits from the aforesaid acts of trademark infringement and unfair competition;

(7) In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in NDC's favor and award NDC its reasonable attorney's fees, costs, and expenses of this action;

(8) In accordance with 15 U.S.C. § 1119, order the Director of the USPTO to cancel of registration nos. 6915281, 6933084, and 6458087, or in the alternative, order the Director of the USPTO to identify NDC as the owner of registration nos. 6915281, 6933084, and 6458087;

(9) In accordance with 15 U.S.C. § 1120, award NDC all damages sustained as a result Defendant's fraudulent registration of registration nos. 6915281, 6933084, and 6458087, including NDC's attorneys' fees, costs, and expenses associated with this action;

(10) Award NDC its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate;

(11) Order that Defendants must file with the Court and serve on NDC's counsel within 30 days after entry of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction; and

(12) Grant NDC such other relief, at law or in equity, to which it is justly entitled.

March 29, 2023

Respectfully submitted:

**HOLLAND & KNIGHT LLP**

By: */s/ Justin S. Cohen*

**Greg Meece**
Texas Bar No. 13898350
S.D. Tex. Bar No. 17487
Greg.Meece@hklaw.com

811 Main Street, Suite 2500
Houston, Texas 77002
713.821.7000

**Justin S. Cohen**
Texas Bar No. 24078356
S.D. Tex. Bar No. 1154835
Justin.Cohen@hklaw.com

**Dina W. McKenney**
Texas Bar No. 24092809
S.D. Tex. Bar No. 3501700
Dina.McKenney@hklaw.com

One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700

*Attorneys for National Diversity Council*