## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| NATIONAL DIVERSITY COUNCIL,<br><br>        PLAINTIFF,<br>V.<br><br>R. DENNIS KENNEDY AND JASON LEE,<br><br>        DEFENDANTS. | CASE NO. 4:23-CV-01162<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff National Diversity Council ("NDC") files this First Amended Complaint against R. Dennis Kennedy ("Kennedy") and Jason Lee ("Lee") for (1) the cancellation of fraudulently obtained trademark registrations under 15 U.S.C. § 1119, (2) damages for fraudulent registrations under 15 U.S.C. § 1120, (3) false descriptions and representations under 15 U.S.C. § 1125(a)(1)(A); (4) cybersquatting under 15 U.S.C. § 1125(d), (5) violation of of the Computer Fraud and Abuse Act Under 18 U.S.C. § 1030, (6) Lee's breach of contract, and (7) civil conspiracy.

### I.    PARTIES

1.    Plaintiff National Diversity Council ("NDC") is a non-profit organization located at 1301 Regents Park Drive, Suite 210, Houston, Texas 77058.

2.    Kennedy is an individual residing in Harris County, Texas.

3.    Lee is an individual residing in Harris County, Texas.

## II.   JURISDICTION AND VENUE

4.      This is an action for various claims under the Lanham Act and the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §§ 1051 et seq. and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b).  The Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367 since those claims form part of the same case or controversy and derive from a common nucleus of operative facts.

5.       Defendants are subject to personal jurisdiction in this district because Defendants either reside in or are doing substantial business in this district. In addition, Defendants have infringed NDC's trademarks and committed other violations of the Lanham Act, the ACPA, and/or the CFAA in this district.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the claims arose in this district and Defendants reside in Harris County.

7.      Under his Independent Contractor Non-Disclosure Agreement, Lee agreed to submit to the jurisdiction of this Court for any proceeding involving his contract with NDC.

## III.   FACTUAL BACKGROUND

### A. NDC and the NDC Trademarks

8.      NDC is a Texas nonprofit corporation formed in 2007 and recognized by the Internal Revenue Service as a charitable organization under Section 501(c)(3) of the Internal Revenue Code of 1986.

9.      NDC's mission is to be both a resource and an advocate for the value of diversity and inclusion.

10.     The NDC serves as the umbrella organization to support statewide and regional affiliates, which foster an understanding of diversity and inclusion as a dynamic strategy for business success and community well-being through various initiatives.

11.     Today, NDC is the undisputed leader in championing diversity in the workplace.

12.     NDC has been actively promoting its various services since at least 2008.

13.     Over the past 15 years, NDC has created a tremendous amount of consumer recognition across the U.S. connection with its NDC trademarks, including the NDC and NATIONAL DIVERSITY COUNCIL (collectively, the "NDC Marks").

14.      NDC is a forerunner of community-based national organizations that champion diversity, equity, and inclusion across the country.

15.     NDC is made up of state and regional councils, Global Diversity Council, Healthcare Diversity Council, Council for Latino Workplace Equity, and National Coalition for Racial Justice & Equity.

16.     In 2022, NDC hosted numerous conferences/summits under the NDC Marks, including the following:

> Black Men in Leadership Summit,
>
> Women in Leadership Symposiums,
>
> Asian American Pacific Islander Summit,
>
> the National Latino Leadership Conference,
>
> the National Disability Inclusion Summit,
>
> the National Manufacturing Conference, and
>
> the National Healthcare DEI Conference.

17.     NDC also hosted college students for its Emerging Leaders Internship Program under the NDC Marks.

18.    Further, NDC offers various training programs, including the Certified Diversity Professional Program (CDP) and the Executive Certification Program under the NDC Marks.

19.    NDC has a 95% score with the highest four star ranking on the Charity Navigator website. Less than 0.1% of charities they rate earn a score of 95% or higher. The Charity Navigator rates organizations on how impactful they are in their given cause area, their fiscal responsibility and transparency, and follow leadership and organizational culture best practices.

20.    Due to the longstanding use, extensive advertising, and widespread recognition among the consuming public, the NDC Marks are widely known recognized as being associated with NDC.

21.    To support its operations, NDC has purchased domain names, developed websites, paid for website hosting, paid for email hosting, and organized its events using the following domain names, which are also listed in Exhibit A:

nationaldiversitycouncil.org
nationaldiversityconsulting.org
nationaldiversitycouncilregistration.org
ndccertificationprogram.org
ndcawards.org
ndcexecutivecertification.org
ndccertificationprogram.org
ndcmail.org
ndcgraduatenetwork.org
ndcindex.org
ndcnews.org
ndcstore.org
ndctoolkit.org
ndcvirtualsuite.org
ncrje.org
arizonadiversitycouncil.org
blackmeninleadershipsummit.org
clwe.org

coloradodiversitycouncil.org
diversitycouncilpics.org
floridadiversitycouncil.org
georgiadiversitycouncil.org
globaldiversitycouncil.org
healthcarediversitycouncil.org
healthcarediversityconference.org
illinoisdiversitycouncil.org
michigandiversitycouncil.org
ohiodiversitycouncil.org
pacificnorthwestcouncil.org
padiversitycouncil.org
tristatediversitycouncil.org
wilsymposium.com
ywlsymposium.com

22.    NDC is currently advertising events that will take place in April and May of 2023 through many of these websites.

23.    If these websites are taken offline, NDC's operations will be disrupted.

**B.    Kennedy's Unlawful Activities**

24.    Kennedy was a co-founder of NDC and previously served as board chairman and an employee of NDC.

25.    Kennedy resigned from NDC on January 31, 2023.

26.    Today, Kennedy has no relationship or affiliation with NDC.

27.    While employed by NDC and continuing after separating from NDC, Kennedy has provided and is continuing to provide services that compete with NDC, such as diversity conferences.

28.    Although Kennedy was providing these services as a separate activity from NDC, Kennedy caused confusion as to whether these services were being provided by NDC or were associated with NDC.

29.    During an NDC board meeting on August 26, 2021, Kennedy discussed and agreed to certain distinctions between his personal, for-profit initiatives and NDC's activities.

30.    As part of that discussion, Kennedy agreed that the following trademarks and programs were NDC's, and not part of Kennedy's for-profit activities:

# NDC Programs & Initiatives

**NDC Entity:** 501c3

**Events:**
- Asian American Pacific Islander Leadership Summit
- Authentic Leadership Summit
- Black Men in Leadership Summit
- Business of Diversity & Inclusion
- Chapter Meetings (i.e., Lunch 'n Learns, Advisory Board Meetings)
- DEI Best Practice Roundtable
- Disability Inclusion Summit
- Generational Diversity Summit
- Healthcare Diversity Conference
- LGBTQ+ Unity Summit
- Latino Leadership Conference
- Veterans Summit
- Women in Leadership Symposium
- Young Women's Leadership Symposium

**Initiatives**
- Council for Latino Workplace Equity
- Global Diversity Council
- Healthcare Diversity Council
- NDC Emerging Leaders Internship Program
- National Coalition for Racial Justice and Equity

**Resources**
- Disability Inclusion Academy
- DiversityFIRST™ Certification Program
- DiversityFIRST™ ERG Academy
- DiversityFIRST™ Toolkit
- DiversityFIRST™ Virtual Suite
- NDC Consulting and Training
- NDC Index

**Awards**
- Authentic Leader Award
- Disability Ally Award
- Disability Leadership Award
- Healthcare DEI Award
- LGBTQ+ Ally Award
- LGBTQ+ Leadership Award
- National Latino Leaders Award



Exhibit B.

31.    Despite that agreement and understanding, Kennedy registered domain names and filed trademark applications under his own name for many of these names/marks, without NDC's knowledge or consent.

32.    For example, in an email in November of 2022, Kennedy demonstrated that he was intentionally hiding information from NDC's board, including the fact that he attempted to own trademark applications, trademark registrations, and domain names that belonged to NDC:

---

From: **Dennis Kennedy** <dennis.kennedy@denniskennedy.org>
Date: Tue, Nov 8, 2022 at 8:26 AM
Subject: NDC Rebranding
To: Angeles Valenciano <angeles.valenciano@nationaldiversitycouncil.org>

Angeles,

  Please dont mention that I own Diversity First and that is the reason for the transition of branding.  NDC has permission to use the trademark.



Thanks,


Dennis Kennedy

www.denniskennedy.org

33.     Further, although Kennedy recognized that these initiatives and marks were NDC's, he nonetheless offered and is offering conferences and other activities using these names, causing consumer confusion.

34.     In at least one recent instance, a participant of one of Kennedy's separate conferences reached out to NDC to ask whether this conference was being provided by NDC.

35.     Kennedy also solicited NDC partners for his own for-profit activities, causing NDC's partners to be confused as to whether Kennedy's activities were being provided by NDC.

36.     Kennedy was asked to "include a disclosure on [Kennedy's] websites that they are **not affiliated with or part of the NDC**."

37.     Recognizing the confusion being caused by his comingling of the NDC and his other activities, Kennedy stated that he "will ask the team to make sure to add this sentence in the [email] communication [about his event], 'This event is not being hosted by the National Diversity Council.'"

38.    Further, in at least one instance, a participant of one of Kennedy's separate conferences provided NDC with a purchase order identifying NDC as the vendor, although Kennedy was providing the conference separate from NDC.

39.    In addition, Kennedy has caused and is likely to continue causing consumer confusion.

40.    As an officer and co-founder, Kennedy had a fiduciary duty to NDC, including a duty of loyalty, a duty of care, and a duty of obedience.

41.    On information and belief, at some point during his relationship with NDC, Kennedy covertly began a scheme to utilize NDC's trademarks, reputation, and contacts to establish and build separate for-profit and non-profit organizations designed to compete with NDC—all while being compensated by NDC.

42.    To date, Kennedy has filed about 376 trademark applications with the USPTO for various trademarks, including NDC's trademarks.

43.    In 2022 alone, before resigning from NDC, Kennedy filed about 350 trademark applications with the USPTO. However, Kennedy never identified NDC as the owner of any trademark application or registration.

44.    Kennedy filed all of these trademark applications with the USPTO while an officer of NDC.

45.    Kennedy also did not notify the NDC Board of his activities regarding these trademark applications and registrations.

46.    For example, on August 5, 2022, prior to his departure from NDC, Kennedy filed application serial no. 97537006 for NDC—the common acronym used by NDC and one of the NDC Marks.

47.     Kennedy stated in his application that this NDC mark was used for "[a]ssociation services, namely, promoting public awareness of professional, personal, and organizational development in the promotion of diversity" and that the date of first use was in 2008.

48.     From 2008 to the present, the NDC mark has been used by NDC, not by Kennedy as an individual.

49.     Then again, on December 6, 2022, while he was with NDC, Kennedy filed application serial no. 90567061 for NDC's name—NATIONAL DIVERSITY COUNCIL. That application matured into Reg. No. 6915281.

50.     Again, the NATIONAL DIVERSITY COUNCIL mark has, at all times, been used by NDC, and not by Kennedy as an individual.

51.     Kennedy never identified NDC as the owner of the NATIONAL DIVERSITY COUNCIL or NDC marks.

52.     NDC was and is still the owner of the NDC Marks.

53.     NDC is also the owner of many other trademarks that Kennedy has fraudulently sought to register with the USPTO under his own name.

54.     Under U.S. law, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors. If a corporation is using a mark, then a principal officer and shareholder is not the owner.

55.     Kennedy, as a former employee and board chair of NDC, does not have any individual ownership rights of NDC's marks, including the NATIONAL DIVERSITY COUNCIL and NDC marks.

56.     Courts regularly hold that "even controlling shareholders and principal officers of a corporation do not have individual ownership rights in a mark that only the corporation used."[1] As further proof that Kennedy does not own the NDC trademarks, one need only look at the specimens Kennedy provided to the U.S. Patent and Trademark Office.

57.     When applying to register NDC's marks, Kennedy filed specimens with the USPTO that show NDC's website and social media posts.

58.     Kennedy's recent conduct regarding trademark registrations stands in stark contrast to normal business practices and also NDC's history with the USPTO.

59.     For example, NDC filed an application for NATIONAL DIVERSITY AWARDS in 2012, which issued as registration no. 4499642 in 2014.

60.     As is standard practice for organizations, Reg. No. 4499642 was properly assigned and owned by NDC.

61.     In 2019, while an officer for NDC, Kennedy received notice that Reg. No. 4499642 would be cancelled if NDC did not timely file a Declaration of Continued Use to maintain the mark on the Principal Register. Indeed, Kennedy received an email from the USPTO on March 18, 2019, a portion of which is copied below:

| | |
|---|---|
| From: | TMOfficialNotices@USPTO.GOV |
| Sent: | Monday, March 18, 2019 01:07 AM |
| To: | dennis_kennedy@texasdiversitycouncil.org ; dennis_kennedy@texasdiversitycouncil.org |
| Cc: | anh.vu@nationaldiversitycouncil.org |
| Subject: | Official USPTO Courtesy Reminder of Required Trademark Registration Maintenance Filing Under Section 8: U.S. Trademark RN 4499642: NATIONAL DIVERSITY AWARDS |

U.S. Serial Number: 85605039
U.S. Registration Number:  4499642
U.S. Registration Date:  Mar 18, 2014
Mark:  NATIONAL DIVERSITY AWARDS
Owner:  NATIONAL DIVERSITY COUNCIL

---

[1] *Cave Man Kitchens Inc. v. Caveman Foods LLC*, No. C18-1274 TSZ, 2020 WL 7342977, at *1 (W.D. Wash. Dec. 14, 2020).

62.     This email included the following: "**WARNING:  Your trademark registration will be CANCELLED if you do not file the required document below during the specified statutory time period.**" *Id.* (emphasis in original).

63.     As of 2019, NDC was still using the mark NATIONAL DIVERSITY AWARDS.

64.     Although Kennedy knew that NDC was still using this mark, Kennedy allowed Reg. No. 4499642 to be cancelled for failure to file the Declaration of Continued Use.

65.     Then, in 2021, while he was still serving as an officer of NDC, Kennedy filed application serial number 90590562 for NATIONAL DIVERSITY AWARDS, which issued as Reg. No. 6458087.

66.     Kennedy did not identify NDC as the owner of the NATIONAL DIVERSITY AWARDS mark.  *Id.*

67.     When Kennedy filed the application for NATIONAL DIVERSITY AWARDS, Kennedy knew that NDC was still using the NATIONAL DIVERSITY AWARDS mark, including at www.ndcawards.org.

68.     The specimen that Kennedy provided to the USPTO as proof of use of the NATIONAL DIVERSITY AWARDS mark in application serial no. 90590562 shows a webpage with the following message from Kennedy:

## Founder's Welcome



Welcome to the National Diversity Awards website. Everyday hard working men and women are transforming their workplaces and communities into surroundings where individuals are valued for their talents and empowered to reach their fullest potential. The National Diversity Awards Association serves as the umbrella organization to showcase our nation's top talent. The awards are given by the National Diversity Council.

69.    Kennedy did not identify NDC as the owner of the NATIONAL DIVERSITY AWARDS mark to the USPTO, just as Kennedy did not identify NDC as the owner of the NDC or NATIONAL DIVERSITY COUNCIL marks.

70.    In his application for the NATIONAL DIVERSITY AWARDS mark, Kennedy stated that the date of first use was in 2012. Exhibit C.  Any use in 2012 of NATIONAL DIVERSITY AWARDS would have been use by NDC, and not Kennedy as an individual.

71.    In violation of 15 U.S.C. § 1120, Kennedy has fraudulently registered at least the following trademarks:

| Mark | Reg. No. |
|---|---|
| NATIONAL DIVERSITY COUNCIL | 6915281 |
| NATIONAL DIVERSITY COUNCIL AN INCLUSIVE COMMUNITY A BETTER NATION | 6933084 |
| NATIONAL DIVERSITY AWARDS | 6458087 |

72.    Kenney knew that NDC was the true and proper owner of the NDC Marks.

73.    Kennedy also fraudulently alleged use by NDC to obtain these registrations, including providing specimens to the USPTO showing NDC's use of these marks.

74.    On Sunday, March 26, 2023, Kennedy's lawyer sent NDC a DEMAND TO CEASE AND DESIST letter, demanding that NDC stop using its own name and trademarks. Exhibit D.

75.    The letter stated that "as of Sunday, March 26, 2023, the NDC's license to use the NDC trademark has been revoked by the trademark owner, R. Dennis Kennedy." *Id.*

76.    Kennedy also stated that "the NDC's licenses [sic] to use the below domains are also revoked," which includes NDC's domain name at nationaldiversitycouncil.org. *Id.*

77.    Kennedy, as a former board chair and employee, is now demanding that NDC stop using its own name and website. *Id.*

78.     Kennedy is not the owner of the NDC Marks.

79.     Kennedy and NDC never entered into any license agreement for the NDC Marks because NDC, as the corporate entity using the marks is the proper owner of those marks.

80.     This letter is the first time that Kennedy ever attempted to notify NDC that he, as an individual, owned any of NDC's trademarks.

81.     This letter is also the first time that Kennedy mentioned the idea that NDC was using the NDC Marks under a license from Kennedy.

82.     There is no written or oral license agreement between Kennedy and NDC for any trademarks, let alone the NDC Marks.

83.     At all times, NDC has been and continues to be the true and proper owner of the NDC Marks.

84.     NDC has used the NATIONAL DIVERSITY AWARDS mark in the past, and is presently using the NATIONAL DIVERSITY COUNCIL AWARDS mark on its website at ndcawards.org.

85.     Despite knowing that it would be confusing, Kennedy created a nearly identical website at diversityawards.com using the following graphic:



86.     Not only is Kennedy infringing on NDC's trademarks, but Kennedy is also creating a false impression that he and his organizations are still associated with NDC.

87.   For example, although Kennedy is no longer affiliated with NDC, Kennedy is telling the public the following on his diversityawards.org website:



88.   NDC does provide the National Diversity Council Awards. However, Kennedy is no longer affiliated with or associated with NDC.

89.   Further, Kennedy does not have a license or permission to use any of NDC's trademarks.

90.   Kennedy also does not have permission to present himself as being affiliated or associated with NDC. Consequently, Kennedy is not entitled to use any of the NDC Marks to promote his other endeavors, nor is he entitled to create the misleading impression that he is still associated or affiliated with NDC.

91.    Kennedy is also now directly competing with NDC for conference participants and sponsors.

**C.  Lee's Unlawful Activities**

92.    Lee is an independent contractor hired by NDC to assist with information technology issues.

93.    In particular, Lee was engaged to handle domain name registrations and manage NDC's websites.

94.    On his bio on the Texas Diversity Council's website, Lee identifies himself as "a front end developer for the National Diversity Council (NDC)," and "is responsible for the upkeep of all websites under the NDC umbrella as well as the creation of new websites and designs designs [and] [h]e also helps administer the server, Google Workspace[.]"

95.    Although he was engaged by NDC, to manage NDC's websites, designs and server for the benefit of NDC, Lee registered domain names under accounts controlled by Kennedy.

96.    Lee used NDC's credit card—which he was entrusted with on the condition that it could only be used for authorized business purposes on behalf of NDC—to charge domain name registration and renewal fees to NDC. However, those domain names are currently (and improperly) controlled by Kennedy.

97.    Although NDC paid Lee and paid GoDaddy for domain names using NDCs Marks, Lee allowed or transferred control of those domain names to Kennedy.

98.    On January 22, 2023, NDC instructed Lee to immediately suspend Kennedy's access to NDC's systems, including Kennedy's access to NDC's Google Workspace and email. Exhibit E.

99.     Roughly 30 minutes after confirming that Kennedy's access had been successfully suspended, Lee temporarily restored Kenendy's access to NDC's systems and allowed Kennedy to download NDC's confidential materials and documents. Lee did not obtain NDC's permission to restore access to Kennedy nor did he advise NDC that he was restoring Kennedy's access.

100.     Following Kennedy's restored—and unauthorized—access, within less than 24 hours, Kennedy accessed, shared, or downloaded approximately 9,492 files on NDC's Google Workspace. This is corroborated by Google user logs that document Kennedy's user activity and are associated with an IP address (76.143.121.65) that, upon information and belief, is tied to a device that is owned or operated by Kennedy.

101.     Moreover, at the time that Kennedy accessed many of these files, he *knew* that his access was prohibited and unauthorized by NDC. Specifically, on January 23, 2023, at 8:32am, Kennedy was given express instructions to not access NDC's Google Workspace:

> While on leave, effective immediately:
>
> (1) your access credentials to your NDC email account, computer, and electronic workspaces are being suspended and under no circumstances should you access, modify, alter, delete, or destroy any material on your NDC email account, computer, or electronic workspaces;

102.     Further, on information and belief, after Lee was instructed to terminate Kennedy's access to NDC's systems, Lee (1) provided Kennedy with access to important NDC Google shared drive folders by adding a new email account for Kennedy, namely dennis.kennedy_denniskennedy.org@nationaldiversitycouncil.org; and (2) downloaded over 1,000 files from the NDC Google shared drive through a separate IP address that, upon information and belief is associated with a device that is owned or operated by Lee, which Lee then provided to Kennedy.

103.    Worse, text messages exchanged between Lee and Kennedy reveal that as of January 25, 2023, Lee was covertly working with Kennedy to transfer all of Kennedy's emails on NDC's Google Workspace—including Kennedy's NDC emails—to a separate Gmail account:



104.    On January 26, 2023, NDC suspended Lee's services and instructed Lee not to access NDC's email accounts or systems and to not share any nonpublic information acquired from NDC with Kennedy (consistent with Lee's contractual obligations to NDC). Further, Lee was instructed not to take any actions regarding NDC's systems (including websites and domain names) without NDC's instructions. Exhibit E.

105.    Despite those instructions, on information and belief, while acting in concert with Kennedy, Lee has accessed NDC's accounts and systems, and has also changed NDC's domain name information.

106.    In particular, on information and belief, while acting in concert with Kennedy, Lee has taken down NDC websites by changing the DNS information for NDC's domain names.

**D.  Defendants Hijack NDC's Domain Names**

107.    On March 30, 2023, NDC learned for the first time that one of its websites— nationaldiversityconsulting.org—was taken down.  The website was pointing to a GoDaddy landing page.

108.    After Defendants were told not to access NDC's accounts, Defendants also took down the website at ndctoolkit.org.

109.    Upon investigation, NDC learned that Defendants had taken the website down because Kennedy and/or Lee controls the account where this domain name is registered.

110.    In fact, Defendants, either individually or acting in concert, control many of NDC's domain names because—as was the case with NDC's marks, Defendants improperly registered them in an account that is separate from NDC's GoDaddy account, notwithstanding the fact that Defendants registered them on behalf of NDC, at the direction of NDC, using NDC's funds, while employed by NDC.

111.    Counsel for NDC sent Kennedy a demand letter on March 30, 2023, demanding that Kennedy stop interfering with NDC's operations by taking down its websites. Exhibit F.

112.    Counsel for Kennedy responded on April 1, 2023, with a proposal where Kennedy would "agree not to change, manipulate, or alter the NDC sites or the DNS information" for 13 of of NDC's websites.  Exhibit G.

113.    Kennedy would not agree to refrain from taking down the majority of NDC's websites identified in Exhibit A.

114.    NDC's Domain Names were paid for using NDC's funds.

115.    Defendants have taken down NDC's websites at the following NDC Domain Names:  ndctoolkit.org,    ndcindex.org,    nationaldiversityconsulting.org,    clew.org, globaldiversitycouncil.org, and healthcarediversitycouncil.org.

## IV.    CLAIMS FOR RELIEF

**COUNT I: Cancellation of Kennedy's Registrations of NDC's Marks Under the Lanham Act, 15 U.S.C. § 1119**

116.    NDC realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

117.    Kennedy has falsely and/or fraudulently obtained at least the following registrations:

| Mark | Reg. No. |
|------|----------|
| NATIONAL DIVERSITY COUNCIL | 6915281 |
| NATIONAL DIVERSITY COUNCIL AN INCLUSIVE COMMUNITY A BETTER NATION | 6933084 |
| NATIONAL DIVERSITY AWARDS | 6458087 |

118.    When submitting each trademark application, Kennedy provided specimens that show NDC's use of these trademarks—not Kennedy's.

119.    In each of these registrations, Kennedy alleged a date of first use based on NDC's use of the mark.

120.    Kennedy never identified NDC as the proper owner of these registrations.

121.    Under 15 U.S.C. § 1119, this Court may determine the right to registration, order the cancelation of at least registration nos. 6915281, 6933084, and 6458087, judicially determine that NDC, not Kennedy, is the owner of the registrations for NDC's trademarks, and direct the USPTO to make appropriate entries in the records with respect to these registrations.

122.    Because Kennedy obtained these registrations by false or fraudulent declaration or representations, the Court should cancel these registrations.

123.    In the alternative, the Court should declare pursuant to 15 U.S.C. § 1119 that NDC is the owner of these registrations, and Kennedy is not the owner.

124.   NDC has been injured and damaged as a result of Kennedy's registration of these marks.

125.   NDC is entitled to recover its actual damages and the costs of this action.

**COUNT II: Damages for Kennedy's False or Fraudulent Registrations Under the Lanham Act, 15 U.S.C. § 1120**

126.   NDC realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

127.   Kennedy has falsely and/or fraudulently obtained at least the following registrations:

| Mark | Reg. No. |
|------|----------|
| NATIONAL DIVERSITY COUNCIL | 6915281 |
| NATIONAL DIVERSITY COUNCIL AN INCLUSIVE COMMUNITY A BETTER NATION | 6933084 |
| NATIONAL DIVERSITY AWARDS | 6458087 |

128.   When submitting each trademark application, Kennedy provided specimens that show NDC's use of these trademarks—not Kennedy's.

129.   Kennedy never identified NDC as the owner of these registrations.

130.   NDC has been injured and damaged as a result of Kennedy's registration of these marks.

131.   Under 15 U.S.C. § 1120, Kennedy is liable to NDC for any damages sustained in connection with his registration and purported attempt to exercise control over NDC's marks.

132.   NDC is entitled to recover its actual damages and the costs of this action.

**COUNT III: False Designation of Origin and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)**

133.    NDC realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

134.    NDC is the owner of the NDC trademarks, including NDC, NATIONAL DIVERSITY COUNCIL, and NATIONAL DIVERSITY COUNCIL AWARDS.

135.    The NDC marks are distinctive marks that are associated with NDC and NDC's business and services.

136.    Kennedy has used, and continues to use, in commerce one or more words, terms, names, symbols, devices, designs and combinations thereof and/or false descriptions of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Kennedy with NDC and/or as to the origin, sponsorship, or approval of the services and commercial activities of Kennedy, and thus constitute trademark infringement, false designation of origin, false association/affiliation, and unfair competition with respect to the NDC Marks, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

137.    Defendant's actions described above have at all times relevant to this action been willful and intentional.

138.    As a result of Defendant's actions, NDC has been damaged and will continue to be damaged. NDC is entitled to recover Defendant's profits, its actual damages, and the costs of this action. NDC is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendant's willful conduct.

**COUNT IV: Cybersquatting. 15 U.S.C. § 1125(d)**

139.    NDC realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

140.    NDC is the owner of the NDC trademarks, including NDC, NATIONAL DIVERSITY COUNCIL, and NATIONAL DIVERSITY COUNCIL AWARDS.

141.    The NDC marks are distinctive marks that are associated with NDC and NDC's business and services.

142.    Defendants registered, used, and/or trafficked in the Domain Names, which are confusingly similar to the NDC marks.

143.    Defendants registered, used, and/or trafficked in the Domain Names with an intent to profit from its confusing similarity to NDC's marks.  Among other things, Defendants registered the Domain Names despite knowing that they had no rights in any name or mark that was referenced or reflected in the Domain Names.

144.    Defendants intended to divert consumers looking for NDC's services online to by exploiting the confusing similarity of the Domain Name and NDC's marks for Defendants' commercial gain.

145.    Defendants' actions described above have at all times relevant to this action been willful and intentional.

146.    Defendants' conduct are directly and proximately causing substantial, immediate, and irreparable harm and injury to NDC and its goodwill and reputation.  Defendants' conduct will continue to damage NDC unless enjoined by this court. Plaintiff has no adequate remedy at law.

147.    NDC is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Names to NDC

148.    NDC is entitled to recover Defendants' profits, its actual damages, and the costs of

this action.  NDC is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendant's willful conduct.

**Count V: Breach of Contract Against Lee**

149.   NDC realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

150.   Lee's contract required Lee to protect NDC's confidential information.

151.   Lee breached this contract by, at a minimum, accessing NDC's systems and confidential information after NDC suspended his services.

152.   Further, Lee breached this contract by, at a minimum, permitting Kennedy to access NDC's systems and confidential information after NDC suspended his services and after NDC explicitly instructed Lee to suspend Kennedys' access.

153.   As a direct and proximate result of Lee's conduct, NDC has been damaged in an amount exceeding the minimal jurisdictional limits of this Court, including nominal damages to the extent necessary.

154.   Lee's conduct was willful and deliberate.

155.   NDC therefore seeks all remedies to which it may be entitled at law or in equity.

**Count VI: Violation of the CFAA Under 18 U.S.C. § 1030 against Kennedy and Lee**

156.   NDC realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

157.   Defendants individually and in active concert with each other, violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) on numerous occasions, by intentionally accessing protected computer systems used for interstate commerce or communication, without authorization or exceeding authorized access, and thereby obtaining

information from the protected computer and causing loss to one or more persons during a one-year period aggregating at least $5,000 in value.

158.   NDC's computer systems that Defendants accessed on numerous occasions were used to conduct business nationwide and therefore were "used in or affecting interstate or foreign commerce or communication," and meet the definition of a "protected computer" set forth in 18 U.S.C. § 1030(e)(2)(B).

159.   Defendants' access to NDC's computer systems was suspended by NDC.

160.   Defendants were notified that they were not permitted to access any of NDC's systems.

161.   Despite these instructions, and despite having Kennedy's access suspended, Defendants accessed NDC's computer systems.

162.   Defendants accessed and transferred NDC's protected data for their own use without authorization from NDC. Thus, Defendants "obtained information" by accessing NDC's protected computer systems.

163.   As a direct and proximate result of Defendants' conduct, NDC has been damaged in an amount exceeding the minimal jurisdictional limits of this Court, including nominal damages to the extent necessary.

164.   Defendants' conduct has caused and is causing irreparable injury to NDC and, unless enjoined by this Court, will continue to do so.

**Count VII: Civil Conspiracy against Defendants**

165.   NDC realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

166.   Kennedy and Lee agreed and/or conspired with each other in connection with

aiding and abetting violations of 15 U.S.C. § 1125(d) and 18 U.S.C. § 1030.

167.    Defendants participated in the conspiracy and performed acts, made statements, and concealed information, all in furtherance of such conspiracy.

168.    Defendants combined to accomplish an unlawful purpose and/or a lawful purpose through unlawful means.

169.    NDC has been injured as a direct and proximate result of the conduct described above.

170.    NDC therefore seeks all remedies to which it may be entitled at law or in equity.

## PRAYER FOR RELIEF

WHEREFORE, NDC respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief against Defendant including, but not limited to:

(1) Actual, treble, and exemplary damages;

(2) In accordance with 15 U.S.C. § 1116, issue a permanent injunction enjoining Kennedy and all persons in active concert or participation with Kennedy from the acts described in this Amended Complaint;

(3) Order Kennedy and all persons in active concert or participation with Kennedy to identify all third parties to whom Kennedy has represented an ownership, affiliation, association, or sponsorship with the NDC Marks and to whom Kennedy has distributed any type of materials incorporating the NDC Marks;

(4) Order Kennedy to provide an accounting of all sales, revenues, and profits related to Kennedy's services that infringe the NDC Marks and that are falsely designated as

being sponsored by, approved by, affiliated with, or associated with NDC;

(5)  Order Defendants to transfer the NDC Domain Names to NDC.

(6)  In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the NDC Marks be surrendered for destruction;

(7)  In accordance with 15 U.S.C. §§ 1117, award NDC all of Kennedy's profits from the aforesaid acts of trademark infringement and unfair competition;

(8)  In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in NDC's favor and award NDC its reasonable attorney's fees, costs, and expenses of this action;

(9)  In accordance with 15 U.S.C. § 1119, order the Director of the USPTO to cancel the registration of NDC's trademarks, including registration nos. 6915281, 6933084, and 6458087, or in the alternative, order the Director of the USPTO to identify NDC as the owner of the registrations for NDCs trademarks, including registration nos. 5346028, 6051338, 6915281, 6933084, and 6458087;

(10)   In accordance with 15 U.S.C. § 1120, award NDC all damages sustained as a result Defendant's fraudulent registration of registrations, including registration nos. 5346028, 6051338, 6915281, 6933084, and 6458087, including NDC's attorneys' fees, costs, and expenses associated with this action;

(11)   Award NDC its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate;

(12)   Order that Defendants must file with the Court and serve on NDC's counsel within 30 days after entry of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

(13)   Order Defendants to refrain from accessing any of NDC's computer systems,

including email systems and shared workspaces;

(14)    Order Defendants to transfer NDC's Domain Names to NDC;

(15)    Order Defendants to identify all of NDC's confidential documents and materials

that are in Defendants' possession, and to return or destroy all such materials; and

(16)    Grant NDC such other relief, at law or in equity, to which it is justly entitled.


April 7, 2023                              Respectfully submitted:

                                          HOLLAND & KNIGHT LLP

                                          By: */s/ Justin S. Cohen*

                                          **Greg Meece**
                                              Texas Bar No. 13898350
                                              S.D. Tex. Bar No. 17487
                                              Greg.Meece@hklaw.com

                                              811 Main Street, Suite 2500
                                              Houston, Texas 77002
                                              713.821.7000

                                          **Justin S. Cohen**
                                              Texas Bar No. 24078356
                                              S.D. Tex. Bar No. 1154835
                                              Justin.Cohen@hklaw.com

                                          **Dina W. McKenney**
                                              Texas Bar No. 24092809
                                              S.D. Tex. Bar No. 3501700
                                              Dina.McKenney@hklaw.com

                                              One Arts Plaza
                                              1722 Routh St., Suite 1500
                                              Dallas, Texas 75201
                                              214.969.1700

                                          *Attorneys for National Diversity Council*